

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00101-CV

IN THE INTEREST OF S.N.C., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-98174J-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant S.C. (Father) appeals from the trial court's order terminating his parental rights to S.N.C. We affirm.

On March 24, 2013, the Texas Department of Family and Protective Services (DFPS) received a report alleging the neglectful supervision of S.N.C.

---

[1]*See* Tex. R. App. P. 47.4.

by C.E. (Mother) and Father.  S.N.C. was removed from the home and placed with a neighbor until DFPS could seek temporary managing conservatorship of S.N.C.  On March 26, 2013, DFPS filed a suit affecting the parent-child relationship (the SAPCR), requesting temporary managing conservatorship of S.N.C. and the termination of Father's and Mother's parental rights.  *See* Tex. Fam. Code Ann. § 262.101 (West 2014).  The trial court entered an emergency order naming DFPS as S.N.C.'s temporary managing conservator, appointing an attorney ad litem for S.N.C., and setting a full adversary hearing.  *See id.* § 262.102 (West 2014).

A full adversary hearing was held on April 5, 2013, at which DFPS, Father, Mother, and S.N.C.'s attorney ad litem appeared.  After the hearing, the trial court entered the following findings:

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the persons entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and makes efforts to eliminate or prevent the child's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the child's removal and enable the child to return home, there is a substantial risk of a continuing danger if the child [is] returned home.

*See id.* § 262.201(b) (West 2014).  The trial court also entered temporary orders that again appointed DFPS as temporary managing conservator of S.N.C., limited Mother's and Father's access to S.N.C., and required DFPS to conduct a home study of B.M., Father's cousin.  *See id.* §§ 105.001, 262.201(c) (West

2

2014).  The trial court later appointed B.M. to be the temporary possessory conservator of S.N.C.  *See id.* § 262.201(e).

DFPS created a family-service plan for Mother and Father.  Under the plan, Father was required to regularly attend Alcoholics Anonymous meetings, "actively engage" in parenting classes, complete anger-management classes, submit to random drug testing, attend visitation with S.N.C., maintain stable housing and employment, attend individual counseling, and "cease all criminal activity."  Father made "some progress" on many of these requirements but never attended individual counseling.  On September 19, 2013, Father was convicted of driving while intoxicated and placed on community supervision for eighteen months.  On November 8, 2013, Father was convicted of assault causing bodily injury and sentenced to thirty days' confinement.[2]  Father ultimately was incarcerated in Arkansas for a parole violation.

On February 13, 2014, five days before the trial on the SAPCR was set to begin, Father filed a motion for continuance requesting that the trial be delayed so he could "continue working his services and to work towards return of his child."  He further noted that he was incarcerated in Arkansas and would not be able to be at the trial because he was "scheduled to have brain surgery in the coming months in prison."  He also filed a motion for bench warrant requesting that the trial court "issue a bench warrant or other legal remedy to permit . . .

---

[2]This charge was the result of Father choking Mother on August 16, 2013.

3

Father to be present for the final trial." Father recognized in the motion, however, that "a bench warrant could not be issued for an inmate out of state." On the first day of the trial, the trial court denied the motions and conducted a bench trial without Father being present. Father was represented by counsel at the trial.

The trial court heard evidence regarding Mother's and Father's neglectful supervision of S.N.C. and their failure to fully comply with their service plans. The trial court terminated Mother's and Father's parental rights on endangerment grounds and in the child's best interests. *See* Tex. Fam. Code Ann. §§ 161.001, 161.206 (West 2014). The trial court appointed DFPS as S.N.C.'s managing conservator and B.M. as her possessory conservator. *See id.* § 161.207 (West 2014). Father appeals from the termination of his parental rights.[3]

In a sole issue, Father argues that the trial court erred by denying his motion for a bench warrant. He does not attack the sufficiency of the evidence to support the termination order. We review the trial court's denial of Father's request for a bench warrant for an abuse of discretion, i.e., whether the trial court acted in an arbitrary or unreasonable manner or acted without reference to any guiding rules or principles. *See In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The right to appear in a civil proceeding is not absolute, and an inmate's right to personally appear must be weighed against the integrity of the correctional

---

[3]Mother signed a relinquishment of her parental rights and does not appeal.

system. *Z.L.T.*, 124 S.W.3d at 165. Several factors are relevant in the determination of whether to grant an inmate's request for a bench warrant: (1) the cost and inconvenience of bringing the inmate to the court proceeding, (2) the security risk to the court and the public; (3) whether the inmate's claims are substantial; (4) whether the court hearing can reasonably be delayed until the inmate's release; (5) whether the inmate can produce admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or other means; (6) whether the hearing is before a judge or a jury; and (7) the inmate's probability of success on the merits. *Id.* at 165–66. The inmate has the sole burden to justify the necessity of his presence by producing factual information showing these factors. *Id.* at 166.

In his motion for a bench warrant, Father recited the factors the trial court was to consider and stated that his presence was necessary to "testify about the steps . . . Father has taken to complete his service plan, his relationship with his child[,] and the factors which contradict the State's position that termination is in the child's best interest." In arguing the motion, Father's counsel stated

> [Father] has had contact with me since being incarcerated [in Arkansas] and has notified me that he absolutely wants to appear in court. He would like to participate in this proceeding. And, obviously, I am unable to secure his attendance here.
>
> As is the policy of this Court, I did notify the court coordinator that he was incarcerated, and she did notify me that because he is out of state she did not believe that the court had the ability to get him here.

DFPS did not oppose Father's request.

5

The Court denied the motion for a bench warrant:

> Well, the Court makes every effort to have clients, parents present for these hearings, and that's why the coordinator regularly sends out a notice to attorneys reminding them if their clients are incarcerated they must bench warrant. However, my power to bench warrant them is only in the State of Texas am I able to get them here, when they're incarcerated within Texas. I don't believe that I have the ability to get someone from Arkansas here.

As stated above, Father was incarcerated in Arkansas at the time of trial and he was represented by counsel during the trial. The trial court heard evidence about the successful steps Father took to comply with the service plan, and the DFPS conservatorship supervisor admitted that she did not know if S.N.C. had "bonded" with Father. However, the trial court also heard evidence of the physically and mentally abusive relationship between Father and Mother and that they repeatedly negligently supervised S.N.C. S.N.C. was doing well in her placement with B.M., and B.M. planned to adopt S.N.C.

We conclude Father failed to meet his burden to justify the necessity of his presence. Many of the arguments raised in his motion for a bench warrant to justify the necessity of his presence at trial were addressed at trial by his counsel. Father did not ask to attend the trial by phone, deposition, or other means, and any testimony regarding his partial compliance with the service plan would have been cumulative of the admitted evidence. Additionally, Father failed to provide factual information establishing why his interest in appearing outweighed the impact on the correctional system. The trial court did not abuse its discretion in denying Father's motion for a bench warrant. *See, e.g.*, *id.*; *In re*

6

*R.F. III*, 423 S.W.3d 486, 490–91 (Tex. App.—San Antonio 2014, no pet.); *In re R.S.*, 252 S.W.3d 550, 553–54 (Tex. App.—Texarkana 2008, no pet.); *In re E.M.C.*, No. 11-08-00235-CV, 2009 WL 1653028, at *6 (Tex. App.—Eastland June 11, 2009, no pet.).

For these reasons, we overrule Father's sole issue and affirm the trial court's judgment.  *See* Tex. R. App. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., concurs without opinion.

DELIVERED:  July 10, 2014